# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| AEVOE CORP.,                ) | Case No.: 2:12-cv-00053-GMN-RJJ |
|                   ) | |
|        Plaintiff,      ) | **ORDER** |
|   vs.                  ) | |
|                   ) | |
| AE TECH CO., LTD., et al.,    ) | |
|                   ) | |
|        Defendants.    ) | |

## INTRODUCTION

Before the Court is Plaintiff Aevoe Corp.'s Motion for Order to Show Cause (ECF No. 49).  Defendants AE Tech Co., Ltd., GreatShield, Inc. and S&F Corporation filed a Response to the Motion (ECF No. 54).  Plaintiff filed a Reply on April 19, 2012 (ECF No. 61) and a Supplement to the Reply on April 25, 2012 (ECF No. 62).  A hearing was held before the Court on April 30, 2012.

At the hearing, the Court orally ordered that Defendants shall cease the sale of the redesigned screen protector immediately.  This written order memorializes the arguments from the hearing and the briefings by the parties, as well as the Court's findings pertaining to Plaintiff's Motion for Order to Show Cause.

## FACTS AND BACKGROUND

On January 24, 2012, this Court issued a preliminary injunction enjoining Defendant AE Tech from infringing on Aevoe's U.S. Patent 8,044,942 (the "'942 Patent") (PI, ECF No. 16).  Following a motion for reconsideration by AE Tech, the Court modified the preliminary injunction language to read that AE Tech was enjoined from "making, using, manufacturing, importing, offering for sale, selling, and/or otherwise using" the "942 patent. (Order, ECF No.

43.)  Notably, the Court deleted the words "colorable imitation" from the original order at AE Tech's request.

On February 24, 2012, the same day of the reconsideration hearing in this case, Plaintiff ordered a GreatShield EZseal from the S&F Defendants. (GreatShield EZseal order confirmation, Ex. 10 attached to FAC, ECF No. 44–10.)  Ten (10) days later, on March 5, 2012, AE Tech's counsel sent Plaintiff's counsel a letter stating that AE Tech had "redesigned" its touch screen protector and that it intends to sell this new product. (*See* March 5, 2012 letter, Ex. A attached to Bloch Decl., ECF No. 50–1.)  AE Tech explained that its "redesign" consists of adding two "channels" that "allow for air to move in and out of the space between the screen protector and a device to which it is attached." (*Id.*)  However, the S&F Defendants confirmed that the GreatShield EZseal Plus product shipped on February 27, 2012 was AE Tech's "redesigned product" which was already on the market using the same product packaging and identification number as the original allegedly infringing GreatShield EZseal. (S&F e-mail, Ex. C attached to Bloch Decl., ECF No. 50–3.)  It also appears that AE Tech is selling its new products in the United States using the same ACase APlus branding as before.

Plaintiff subsequently amended its complaint to add GreatShield Inc. and S&F Corporation as Defendants on March 14, 2012. (*See* FAC.)  Plaintiff then filed the instant motion asking the Court to enter sanctions against the Defendants for their willful disregard of the Court's Preliminary Injunction Order.

## DISCUSSION

### A.    Legal Standard

A party seeking to enforce an injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes. *TiVo, Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2001)(en banc).  In *TiVo*, the Federal Circuit reviewed the contempt proceedings that the district

court had held following the issuance of a permanent injunction in a patent infringement case. The Federal Circuit rejected the infringement-based understanding of the colorably different test and held that "[i]nstead of focusing solely on infringement, the contempt analysis must focus initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused products." *Id.*

> The primary question on contempt should be whether the newly accused product is so different from the product previously found to infringe that it raises "a fair ground of doubt as to the wrongfulness of the defendant's conduct." The analysis must focus not on differences between randomly chosen features of the product found to infringe in the earlier infringement trial and the newly accused product, but on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product. Specifically, one should focus on those elements of the adjudged infringing products that the patentee previously contended, and proved, satisfy specific limitations of the asserted claims. Where one or more of those elements previously found to infringe has been modified, or removed, the court must make an inquiry into whether that modification is significant. If those differences between the old and new elements are significant, the newly accused product as a whole shall be deemed more than colorably different from the adjudged infringing one, and the inquiry into whether the newly accused product actually infringes is irrelevant. Contempt is then inappropriate.

*Id.* (internal citations omitted).

"The patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences." *Id.* at 883 (*citing KSM Fastening Sys., Inc. v. H.A. Jones Co.*, 776 F.2d 1522, 1524(Fed. Cir. 1985); *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir.1992); *AMF, Inc. v. Jewett*, 711 F.2d 1096, 1100 (1st Cir.1983); *Stringfellow v. Haines*, 309 F.2d 910, 912 (2d Cir.1962); *Telling v. Bellows–Claude Neon Co.*, 77 F.2d 584, 585 (6th Cir.1935).

A court may issue civil contempt sanctions for the purpose of coercing a party to comply with a court order, to compensate the party seeking sanctions for losses incurred, or both.

*Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir.1992).  In order for sanctions to issue, it must be established that the non-moving party knowingly violated a definite and specific order of the court requiring it to perform or refrain from a particular act or acts. *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir.2002); *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir.1986).  The party moving for sanctions must provide "clear and convincing evidence" of the violation, *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir.1998), although the failure to comply with the court order need not be intentional. *Donallco, Inc.*, 787 F.2d at 1379. Furthermore the violation cannot be based on a good faith and reasonable interpretation of the court's order. *Wolfard Glassblowing Co. v. Willy Vanbragt; Mary Vanbragt, individually, and d/b/a Zodiac Expressions*, 118 F.3d 1320, 1322 (9th Cir.1997) (citing *In re Dual–Deck*, 10 F.3d at 695).[1]

## B.    Alleged Infringement

Plaintiff argues that while Defendants have made some changes to the patented product, Defendants' redesigned screen protector is substantially the same.  The doctrine of equivalents provides that a product still infringes a patent even if not identical if it works in substantially the same way and accomplishes substantially the same result. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856 (1950).  A finding of equivalence in patent infringement action is a determination of fact, and proof thereof can be made in any form, through testimony of experts or others versed in technology, by documents, including texts and treatises, and by disclosures of the prior art. *Id.* at 609.

---

[1] The Court was reluctant to apply *TiVo* to the facts of this case, since *TiVo* involved a permanent injunction that was issued after the product was adjudged to infringe the patent at issue.  Here, the Court has only issued a preliminary injunction on a finding that Plaintiff is likely to succeed on its claims of patent infringement.  However, both parties cited to *TiVo* as being applicable to this case.  The Court found a Federal Circuit case, *Seiko Epson Corp. v. Nu-Kote Intern., Inc.* 190 F.3d 1360 (Fed. Cir. 1999), where the court of appeals reviewed a district court's order of contempt in the case of an issued preliminary injunction.  The Court affirmed the order of contempt but limited the sanctions to only be assessed to products either specifically enjoined or products that were only colorably different therefrom. *Id.* at 1372.  Therefore, this Court will apply the standard articulated in *TiVo* to the preliminary injunction ordered in this case.

Plaintiff argues that the facts of this case are similar to the facts in *SEB S.A. v. Montgomery Ward & Co., Inc.*, 137 F.Supp.2d 285 (S.D.N.Y. 2001).  In *SEB*, the patent infringer attempted to evade a preliminary injunction by modifying its infringing deep fryer to use "ring segments" instead of a "continuous ring" for insulation. *Id.* at 287.  The infringer continued to sell the modified product under the same trademark and packaging it had used to sell the enjoined product, which the court found falsely led the public to conclude they were free to sell a product that had been preliminarily enjoined. *Id.* at 288.  Applying the doctrine of equivalents, the court found that although the modified fryer did not literally infringe the patent at issue, the defendant had violated the injunction because "[t]he insulating ring segments perform[ed] substantially the same function as the insulating ring, in substantially the same way, to achieve substantially the same result." *Id.* at 288.

Plaintiff argues that like the difference between the ring segments and a continuous ring in *SEB*, the difference between a continuous spacer and a spacer divided by a millimeter-wide "channel" is unimportant and insubstantial, reflecting no colorable distinction from Defendant's older, touch screen protectors that have been enjoined.  Plaintiff argues that the channel performs no particular function that is necessary for the protection of the touch screen and does not have any technical significance in the product.  Plaintiff argues that the old and new infringing products perform substantially the same function, in substantially the same way, to achieve substantially the same result, namely:

- The *function* of the spacer in both the '942 patent and the alleged redesigned infringements is to "space the plastic film near but not in contact with the touch screen portion" of a hand held electronic device. (*See* '942 Patent at Abstract and Claim 1, Ex. A attached to FAC, ECF No. 44–1.)
- The *way* the spacer works in both the '942 patent and the alleged redesigned infringements is by "having a thickness sufficient to" create the space called for in the claims and to attach the film to non-touch-responsive portions of the device. (*See id.*)
- The *result-for* both the '942 patent and the alleged redesigned infringements-is that the protector's "window can be pressed against the

touch screen portion for operation of the electronic device while preventing direct contact of a user's fingers with the touch screen portion" and "can be easily removed without leaving any residue on the touch screen portion." (*See id. at* Claim 1 *and* col. 7, ll. 29–30.)

Defendants argue that Plaintiff's interpretation of the *SEB* case is incorrect.  While the court focused on the functionality of the two different "rings", in the *SEB* case, the patent claim asserted did not contain any requirement that the ring functions to seal the air space.  However the '942 patent does explicitly require a continuous spacer to form an enclosed air space in claim one.  Defendants argue that the new design does not infringe the '942 Patent under the doctrine of equivalents[2] because (1) the spacer is not continuously surrounding the transparent window, and (2) there is no enclosed air space formed when the screen protector attaches to the device.  Claim 1 of the '942 patent requires a spacer "provided along the outer perimeter of the plastic film **continuously surrounding** the transparent window" with "an exposed adhesive for removably mounting the protector upon the outer perimeter of the front face to form an **enclosed air space** between the transparent window of the plastic film the spacer and the touch screen portion of the device." ('942 Patent at col. 8, ll. 35–36, 39–43)(emphasis added).

Defendants also argue that this case is similar to *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1104–07 (Fed. Cir. 2000), where the Federal Circuit affirmed a district court ruling that held a patent was not infringed under the doctrine of equivalents where the patent claimed longitudinal strips of adhesive that extended a majority of the length of the longitudinal margin of a special mailer-type business form and the accused device was a mailer with longitudinal strips of adhesive that extended only a minority of the length of a longitudinal margin of a mailer.  In that case, the Federal Circuit focused on the fact that they could not read the term "majority" out of the claim, because if a minority could be equivalent the limitation would not be necessary. *Id.* at 1106.  Here, Defendants argue, the non-continuous spacer cannot

---

[2] Aevoe does not concede that the redesigned screen protector does not literally infringe on the '942 Patent.

form an enclosed air space and is not equivalent to a continuous spacer that does.  Defendants assert that Plaintiff seeks to expand the claims of the '942 Patent under the doctrine of equivalents to eliminate express limitations set forth in the claims. *See also PSC Computer Products, Inc. v. Foxconn Intern., Inc.*, 355 F.3d 1353, 1357 (Fed. Cir. 2004) (A patentee may not write narrow claims for allowance by the PTO and subsequently attempt to broaden the claims in court by using the doctrine of equivalents.") (citing *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 395–96 (1967)).

This Court found after a physical examination of the redesigned item, that the two channels that are on the redesigned screen protector are not straight channels that cut through the spacer.  Instead, the two channels are a zigzag design: a vertical channel starts at the end of the spacer; about halfway through the width of the spacer the channel makes a ninety degree turn and proceeds horizontally for a very short distance; then the channel makes another ninety degree turn down toward the starting point and proceeds back down the spacer about a quarter of the width of the spacer; another ninety degree turn is made where the channel again proceeds horizontally for a very short distance; finally the channel makes a ninety degree turn that vertically extends the channel the width of the spacer, such that there is a path through the width of the spacer.  The channels are similar to "U-shaped" plumbing traps that are commonly found under sinks.  Neither party was able to explain the purpose of this multi-turn channel and if it adds any functionality to the screen protector.  It appears that Defendants have tried to cleverly design around the limitations of claim one but sought to ensure the functionality of the original design.  However, the Court finds that Defendants have not succeeded in their task and instead that the redesigned screen protector is not more than colorably different than the enjoined product.

First, the Court finds that the new redesigned screen protector still creates an enclosed airspace as claimed by the '942 patent.  While Defendants argue that the enclosed airspace needs

to be "fully" enclosed this would add an extra limitation into claim one.  Instead, the dictionary defines enclose as "to surround on all sides; close in: *a valley that is enclosed by rugged peaks.*" *See American Heritage Dictionary* (5th ed. 2011), *available at* http://ahdictionary.com/word/search.html?q=enclose#E5129400.  Therefore, the redesigned cover's spacer still functions to enclose an air space even with two channels.  Simply because there are two small openings does not change the fact that air is enclosed between the spacer, the plastic film and the transparent window.

Second, despite Defendants' arguments that the spacer is not continuous, the Court finds that under the doctrine of equivalents it is.  At every point along the continuum around the transparent window the spacer is present.  This is precisely so because of the zigzag pattern of the channels.  Instead of one vertical channel across the width of the spacer, the zigzag design allows the spacer to always be in contact with the touch screen.  If one proceeds from left to right along the length of the spacer where the channels are present there is never a point along the continuum where the spacer is not in contact with the touch screen, even though there are portions of the spacer that are not as wide as other portions.  Thus the spacer does "continuously" surround the transparent window.  The Court finds that the redesigned screen protector performs substantially the same function, in substantially the same way, to achieve substantially the same result.[3]

When the Court issued the preliminary injunction based on the AE Tech previous allegedly infringing screen protector, the Court found that Plaintiff was likely to succeed on the merits of its infringement claim because AE Tech's screen protector literally read on every element of claim one of the '942 patent.  The Court did not analyze each limitation of claim one because AE Tech's product was identical to Plaintiff's screen protector.  Under *TiVo,* the Court must look at those elements that were previously found to infringe and make an inquiry into

---

[3] It may be possible for Plaintiff to prove literal infringement but the Court finds it unnecessary to address the issue at this juncture.

modifications of those elements and determine whether that modification is significant.  646 F.3d at 882.  Here, those elements are whether the added channels to the spacer make the redesigned screen protector colorably different from the spacer of the originally enjoined screen protector. The Court finds that they do not and that accordingly a finding of contempt is appropriate.

The Court also finds sanctions are appropriate in this case.  It is apparent that AE Tech may have already redesigned its screen protector at the time of the reconsideration hearing on February 24, 2012.  However, AE Tech did not mention the changes and allowed S&F to sell the screen protector, knowing that such actions would violate the Court's order.  It would be impossible for the consumer to know if Defendants were selling the enjoined screen protector because the packaging had not changed.  Defendants' actions in redesigning the screen protector are equivalent to the "unscrupulous copyist" that *Graver Tank* warned against. 339 U.S. at 607 ("...courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for-indeed encourage-the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement.")  Accordingly, the Court does not find that the Defendants' actions were based on a good faith and reasonable interpretation of the Court's order.

At the hearing, the parties discussed the potential sanctions that would be appropriate given the circumstances of this case.  Both parties agreed that extra briefing would be needed to determine the amount of damages that were incurred by Plaintiff based on the sales of Defendants' screen protectors.  Furthermore, as a result of Defendants' conduct, the Court agrees

with Plaintiff that the previously omitted words, "colorable imitation" should be included in the Preliminary Injunction Order.  The Court will issue an Amended Preliminary Injunction Order.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff Aevoe Corp.'s Motion for Order to Show Cause (ECF No. 49) is **GRANTED**.

Defendants are **immediately enjoined** from selling the redesigned screen protector that is the subject of the contempt proceeding.

Plaintiffs shall submit for the Court's consideration an affidavit and brief relating to the monetary sanctions that the Court should award by **May 11, 2012 at 5:00 p.m.**  Defendants' response is due by **June 8, 2012 at 5 p.m.** and Plaintiff's reply is due on **June 15, 2012 at 5 p.m.**

**DATED** this 2nd day of May, 2012.

_____
Gloria M. Navarro
United States District Judge