# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| AEVOE CORP., a California corporation, )<br><br>                    Plaintiff,                    )<br>          vs.                                        )<br>                                                          )<br>AE TECH CO., LTD., a Taiwan corporation; )<br>S&F Corporation *dba* SF PLANET )<br>CORPORATION, a Minnesota corporation, )<br>and GREATSHIELD INC., a Minnesota )<br>corporation,                                     )<br>                    Defendants.               )<br>_____ ) | Case No.: 2:12-cv-00053-GMN-RJJ<br><br>**ORDER** |

     Pending before the Court are the proposed claim constructions submitted by Plaintiff Aevoe Corp. ("Plaintiff") and Defendants AE Tech Co., Ltd., S&F Corporation, and GreatShield, Inc. (collectively, "Defendants").  Plaintiff filed its Opening Brief on November 19, 2012. (ECF No. 157.)  Defendants also filed a brief styled as an Opening Brief on November 19, 2012. (ECF No. 159.)  Subsequently, on December 5, 2012, Defendants filed a Response to Plaintiff's Opening Claim Construction Brief. (ECF No. 171.)  In response, on December 12, 2012, Plaintiff filed a Motion to Strike Defendants' Unauthorized Opening Claim Construction Brief because it was not authorized by Local Rule 16.1-16. (ECF No. 182)  On December 12, 2012, Plaintiff also filed its Reply Brief. (ECF No. 183.)  The Court subsequently denied Plaintiff's Motion to Strike and construed Defendants' "Opening Brief" as its Responsive Brief. (*See* ECF No. 186.)  Thus, the Court will not consider Defendant's Response Brief.  A *Markman* Claim Construction Hearing was held on February 5, 2013.

     This is an Order construing the disputed terms of the claims in United States Patent No. 8,044,942 ("the '942 Patent").  The parties have submitted nine (9) terms and phrases for construction. (*See* Joint Statement 2:13-5:22, ECF No. 120.)  In addition, the parties agree on

1    the interpretation of six (6) additional terms. (*See id.* at 2:3-10.)  The Court will adopt the

2    proposed claim construction for the six terms on which the parties agree, as reflected herein.

3          After consideration of the briefs and material submitted by the parties, the arguments of

4    counsel at the claim construction hearing, and the record before the Court, the Court issues this

5    Order construing the disputed claim terms.

6    **I.      BACKGROUND**

7           Plaintiff Aevoe Corp. ("Plaintiff") is the sole owner of the '942 Patent entitled "Touch

8    Screen Protector." (Am. Compl. ¶¶ 13-14, ECF No. 44.)  Plaintiff is a California corporation (*id.*

9    at ¶ 6) that "markets and sells products embodying the '942 Patent throughout the United States"

10   (*id.* at ¶ 15).  The invention of the '942 Patent relates to a touch screen protector for hand-held

11   electronic devices. U.S. Patent No. 8,044,942, at [57] (filed June 14, 2011).  Specifically, the

12   '942 Patent discloses to a touch screen protector that does not physically contact the touch

13   screen portion of the device. *Id.*  Additionally, the touch screen protector disclosed in the '942

14   Patent is "easily attached and removed" from the hand held device. '942 Patent, col.1, ll.10-13.

15          In this action, Plaintiff alleges that three defendants infringed the '942 Patent.  First,

16   Plaintiff alleges that Defendant AE Tech ("AE Tech") is a Taiwan corporation (*id.* at ¶ 7) that

17   "manufactures, imports, advertises, sells, and offers to sell products . . . that infringe the '942

18   Patent" (*id.* at ¶ 16).  Second, Plaintiff alleges that Defendant S&F Corporation ("S&F") is a

19   Minnesota corporation that does business as SF Planet Company ("SF Planet") (collectively,

20   "S&F Defendants"). (*Id.* at ¶¶ 7-8.)  The S&F Defendants allegedly "import, advertise, sell, and

21   offer to sell products . . . that infringe the '942 Patent." (*Id.* at ¶ 17.)  Third, Plaintiff alleges that

22   Defendant GreatShield is a Minnesota corporation that is a corporate affiliate of the S&F

23   Defendants. (*Id.* at ¶¶ 11-12.)  Plaintiff further alleges the S&F Defendants "operate an

24   Amazon.com storefront" through which they sell the AE Tech products that allegedly infringe

25   the '942 Patent. (*Id.* at ¶¶ 30-31.)

In response to the Defendants' allegedly infringing activities, Plaintiff filed the instant action on January 11, 2012, alleging infringement of the '942 Patent. (*See* Compl., ECF No. 1.) Plaintiff filed a motion for preliminary injunction. (ECF No. 3.)  The Court granted that motion and entered a Preliminary Injunction on January 24, 2012. (ECF No. 16.)  Subsequently, on March 14, 2012, Plaintiff filed its First Amended Complaint. (*See* Am. Compl., ECF No. 44.)

## II.   LEGAL STANDARD

The resolution of patent infringement actions generally requires two distinct steps. First, the Court engages in a claim construction analysis to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd 517 U.S. 370 (1996).  Only once the claims are properly construed does the action proceed to the second step, in which the factfinder compares those properly construed claims to the accused device to determine, as a matter of fact, whether all of the claim limitations are present in the accused device. *Id.*  At the current stage of this patent infringement action, the Court focuses only on the first step.

### A.   Claim Construction

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc) (citations and internal quotation marks omitted).  The interpretation of the scope and meaning of disputed terms in patent claims is a question of law and exclusively within the province of a court to decide. *Markman*, 517 U.S. at 372.  When construing disputed claim terms, the Court must give each disputed term "the meaning that the term would have to a person of ordinary skill in the art at the time of the invention," unless the patentee clearly intended a different definition. *Phillips*, 415 F.3d at 1312-13.  Furthermore, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears but in the context of the entire patent, including the

specification." *Id.* at 1313.

In certain cases, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.  In other instances, the claim term may have a particular meaning in the field of art that is not immediately clear. *Id.*  In such cases, the Federal Circuit has instructed that a court's analysis should focus on the intrinsic evidence, including "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* at 1314.  "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.*  "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Id.*  Specifically, differences between the claims often provide useful guidance in understanding the meaning of the claim terms. *Id.*  "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314–15.

The claims, however, are not read in isolation, but are read in light of the entire specification, of which the claims are a part. *Id.*  In fact, the specification is "the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Courts can also look to the prosecution history as part of "intrinsic evidence" to determine how the Patent Office and the inventor understood the patent. *Phillips*, 415 F.3d at 1317.  However, the prosecution history lacks the clarity of the specification and more often is less useful for claim construction purposes. *Id.*

Finally, extrinsic evidence may also be relevant to claim construction. *Id.*  Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including

expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Although such evidence may aid the Court in construing claim terms, "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Phillips*, 415 F.3d at 1319.  Thus, "while extrinsic evidence can shed useful light on the relevant art, . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted).

### B.   Doctrine of Claim Differentiation

In *Phillips*, the Federal Circuit also instructed that "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms." 415 F.3d at 1314 (citation omitted).  "The doctrine of claim differentiation stems from 'the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope.'" *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (quoting *Karlin Tech. Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 971-72 (Fed.Cir.1999)).  The doctrine of claim differentiation frequently arises when a party attempts to construe a claim term that appears in an independent claim in a way that includes a limitation that is claimed in a dependent claim. *See* 35 U.S.C. § 112(d) ("[A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed").  However, when a limitation is introduced in a dependent claim, courts presume that the same limitation is absent from the independent claim from which the dependent claim depends. *Phillips*, 415 F.3d at 1314 (citation omitted); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (citations omitted).  In fact, in *Liebel-Flarsheim*, the Federal Circuit expressly stated that "[i]n such a setting, where the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest." 358 F.3d at 910; *see also Baldwin Graphic Sys., Inc. v.*

*Siebert, Inc.*, 512 F.3d 1338, 1345-46 (Fed. Cir. 2008) (refusing to "bootstrap a temporal restraint" on a method step when no such limitation was expressed in either independent claim, but was instead featured in a dependent claim).

### III.   CONSTRUCTION OF THOSE TERMS ON WHICH THE PARTIES AGREE

In their Joint Claim Construction and Prehearing Statement, the parties submitted agreed upon proposed constructions for six (6) claim terms. (Joint Statement 2:2-10, ECF No. 120.) The Court hereby adopts those proposed constructions as follows:

***"Touch screen"*** shall be construed as "an interactive screen with both input and display functionality that a user touches in order to operate an electronic device."

***"Touch screen portion"*** shall be construed as "the operable portion of the touch screen."

***"Hand held electronic device"*** shall be construed as "an electronic device designed to be operated while being held in the hand."

***"Interference patterns"*** shall be construed as "optical artifacts such as Newton rings and color changes caused by interference."

***"Non-functional band"*** shall be construed as "the area that surrounds a touch screen portion of a hand held electronic device which is made of a different material or made of the same material as a touch screen but is not touch sensitive."

***"Adhesively mounted"*** shall be construed as "attached or adhered by an adhesive."

### IV.   CONSTRUCTION OF THE DISPUTED CLAIM TERMS

The parties dispute the construction of nine (9) terms:  (1) spacer; (2) continuously surrounding; (3) transparent window; (4) enclosed air space; (5) removably mounting; (6) provided along the outer perimeter; (7) coating; (8) micro-particles; and (9) adhesive strip.

Terms one through six are present in independent Claim 1.  The disputed claim terms are highlighted below.  Claim 1:

A touch screen protector for a hand held electronic device having a front face that includes a touch screen portion and an outer perimeter comprising:

a plastic film having front and back sides, an outer perimeter that corresponds
   to that of the device, and a <u>transparent window</u> that corresponds in size to the
   touch screen portion; and

a <u>spacer provided along the outer perimeter</u> of the plastic film <u>continuously
   surrounding</u> the <u>transparent window</u>, having a thickness sufficient to space
   the plastic film near but not in contact with the touch screen portion, and an
   exposed adhesive for <u>removably mounting</u> the protector upon the outer
   perimeter of the front face to form an <u>enclosed air space</u> between the
   <u>transparent window</u> of the plastic film, the <u>spacer</u> and the touch screen
   portion of the device;

wherein the window can be pressed against the touch screen portion for
   operation of the electronic device while preventing direct contact of a user's
   fingers with the touch screen portion and without producing visible
   interference patterns during use.

Term seven, "coating," is present only in dependent Claim 15, which depends from Claim 1.

The disputed claim term is highlighted below.  Claim 15:

The touch screen protector of claim 1, wherein the transparent window is clear but
includes a <u>coating</u> that provides a matte effect or a privacy screen feature.

Term eight, "micro-particles," is present in dependent Claim 5 and dependent Claim 6.  Claim 5
depends from Claim 1 and Claim 6 depends from Claim 5.  The disputed claim term is
highlighted below.  Claim 5:

The touch screen protector of claim 1, wherein <u>micro-particles</u> are present on the
back side of the plastic film at a density which is sufficiently high to provide an
anti-static effect without adversely affecting quality of images viewed through the
window.

Claim 6:

The touch screen protector of claim 5, wherein the plastic film also includes
micro-particles adhered to the front side of the window in an amount effective for
providing anti-glare and anti-static effects to the window.

Term nine, "adhesive strip," is present only in dependent Claim 8, which depends from Claim 5.

The disputed claim term is highlighted below.  Claim 8:

/ / /

The touch screen protector of claim 5, wherein the spacer includes at least one adhesive strip that is applied onto the plastic film, wherein the adhesive strip is opaque.

### A.   "Spacer"

**Proposed Constructions[1]**

| | |
|---|---|
| **Plaintiff** | "an element or elements located on the back of the plastic film of the touch screen protector having a thickness sufficient to space the plastic film near but not in contact with the touch screen portion" |
| **Defendants** | "a structure provided along the outer perimeter of the plastic film continuously surrounding the transparent window, this structure having a thickness sufficient to space the plastic film near but not in contact with the touch screen portion of a hand held electronic device, and this structure containing an exposed adhesive for removably mounting the protector upon the outer perimeter of the front face of a hand held electronic device to form an enclosed air space between the transparent window of the plastic film and the touch screen portion of the hand held electronic device.  The spacer may consist of one or more layers, The layers may include a first strip of material adhered to the plastic film by an adhesive, a second strip of material adhered to the first strip by an adhesive and an exposed adhesive on the second strip of material." |

The term "spacer" appears in Claims 1, 3, 4, 7-9, and 11 of the '942 Patent.

### 1.   Defendants' Proposed Construction

Defendants' construction uses 143 words to define the term "spacer." (Defs.' Br. 8:26-9:6, ECF No. 159.)   However, Defendants have failed to adequately support such a verbose construction of a simple word.  Furthermore, even where Defendants have attempted to support their proposed construction with the words of the patent, the Court finds these arguments unpersuasive.  Defendants contend that their construction is consistent with the "claims,

---

[1] Throughout this Order, Plaintiff's proposed constructions are taken from its Opening Claim Construction Brief. (*See* ECF No. 157.)  Similarly, throughout this Order, Defendants' proposed constructions are taken from its Opening Claim Construction Brief (*see* ECF No. 159), which the Court construes as its Responsive Claim Construction Brief (*see* ECF No. 186.)

specification, drawings and the prosecution history of the '942 patent, along with the way in which the term is used in the art." (*Id.* at 9:17-19.)  Specifically, Defendants rely on Figure 3, "an expanded partial sectional view of the touch screen protector," and the words of the specification associated therewith. (*Id.* at 9:19-10:12 (quoting '942 Patent col.3 ll.3-4).)  From this Figure, Defendants first assert that the spacer consists of "a structure that includes the exposed adhesive." (Defs.' Br. 10:2-3.)  Next, Defendants contend that the spacer must have a "thickness sufficient to space the plastic film near but not in contact with the touch screen portion, and an exposed adhesive . . .." (Defs.' Br. 10:4-6 (quoting '942 Patent col.2 ll.1-3).)  Defendants further argue that the spacer "may also consist of one or more layers." (Defs.' Br. 10:12.)  To support this argument, Defendants rely on language in the written description that explains that the spacer may consist of a first strip adhered to the plastic film and a second strip adhered to the first strip, (Defs.' Br. 10:8-12 (citing '942 Patent col.7 ll.14-19).)  Despite Defendants' attempts to base their proposed construction in the language of the '942 Patent, for the reasons discussed below, the Court declines to adopt Defendants' proposed construction.

First, the Court agrees, and it appears that Plaintiff does not dispute, that the spacer must have "a thickness sufficient to space the plastic film near but not in contact with the touch screen portion of a hand held electronic device."  However, Defendants' proposed construction is still problematic.  Specifically, most of Defendants' proposed construction uses terms that appear elsewhere in the claims.  Many of these claim terms are the subject of claim construction disputes that are discussed in later sections of this Order.  In fact, the parties have requested that the Court construe "provided along the outer perimeter," "continuously surrounding," "transparent window," "removably mounting," and "enclosed air space."  Nevertheless, Defendants have used each of these terms in their proposed construction of "spacer."  Furthermore, Defendants' proposed construction incorporates the term "exposed adhesive."  This term, although not disputed, does appear in Claims 1, 2, and 8-11.  Because these claim

terms appear elsewhere in the claims, the Court finds that it is improper and unhelpful to incorporate these terms in the definition of "spacer." *See Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1348 (Fed. Cir. 2007) (rejecting a claim construction that incorporated a term found elsewhere in the claim because such a construction would conflict with the words of the claim).

The Court also finds that the words of the specification do not require that the "the spacer may also consist of one or more layers."  Specifically, the Federal Circuit has held that "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).  In the '942 Patent, dependent Claim 9 adds the limitation that the spacer "comprises at least two strips."[2]  In fact, the concept of a spacer made up of layers is wholly absent from the words of Claim 1. *See* '942 Patent col.8 ll.28-48.  Thus, Defendants' proposed construction attempts to add a limitation from dependent Claim 9 into independent Claim 1.  Under *Liebel-Flarsheim*, such a construction is impermissible unless Defendants provide a persuasive argument based on the intrinsic evidence that overcomes the presumption.  Defendants have provided no such basis for overcoming the *Liebel-Flarsheim* presumption.  Accordingly, this portion of Defendants' proposed construction is also impermissible.

## 2.     Plaintiff's Proposed Construction

Plaintiff's construction, on the other hand, uses 36 words to define the term "spacer."[3] Consistent with the "fundamental rule of claim construction" that "claims must be construed so as to be consistent with the specification, of which they are a part," *Phillips*, 415 F.3d at 1316

---

[2] Claim 9 depends from Claim 6.  Claim 6, in turn, depends from Claim 5.  Finally, Claim 5 depends from Claim 1.  Therefore, Claim 9 ultimately incorporates all the limitations of Claims 1, 5, and 6.

[3] Plaintiff originally proposed a more verbose construction in the Joint Claim Construction and Prehearing Statement. (*See* ECF No. 120.)  However, Plaintiff later correctly noted that its original proposed construction improperly used other claim terms to define the term "spacer." (Pl.'s Br. 7 n.3, ECF No. 157 (citing *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1348 (Fed. Cir. 2007)).)  For that reason, Plaintiff amended its proposed construction to the current proposal.

(quoting *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003)), Plaintiff supports its proposed construction with the words of the specification of the '942 Patent.  Plaintiff first contends that the spacer must have "'a thickness sufficient to space the plastic film near but not in contact with the touch screen portion' of the device to which the patented invention is attached." (Pl.'s Br. 8:4-6 (citing '942 Patent col.3, ll.34-35).)  As discussed above in Section IV.A.1, above, neither party appears to dispute that some version of this language should be included in the final construction of this term.  Second, Plaintiff asserts that the spacer "must be on the back side of the touchscreen protector." (Pl.'s Br. 8:9-10 (citing '942 Patent col.7, ll.12-13).)  Plaintiff supports this assertion with language from column 7 of the '942 Patent that expressly states that "[t]he spacer is on the back side of the plastic film . . .." '942 Patent col.7, ll.12-13.

      With one exception, the Court finds that Plaintiff's construction is correct.  Specifically, both Plaintiff's and Defendants' construction unwisely uses the term "space" in their proposed constructions.  For this reason, the Court will adopt a modified version of Plaintiff's proposed construction.  Thus, the Court construes the term "spacer," as used in the '942 Patent, as "an element or elements located on the back of the plastic film of the touch screen protector having a thickness such that the protector is close to, but not in contact with, the touch screen portion."

### 3.      The Court's Construction

      After looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the term "spacer," as used in the '942 Patent to mean "an element or elements located on the back of the plastic film of the touch screen protector having a thickness such that the protector is close to, but not in contact with, the touch screen portion."  Therefore, the Court construes the term "spacer" as "an element or elements located on the back of the plastic film of the touch screen protector having a thickness such that the protector is close to, but not in contact with, the touch

screen portion."

**B.   "Continuously Surrounding the Transparent Window"**

**Proposed Constructions**

| | | |
|---|---|---|
| **Plaintiff** | **"continuously surrounding"** | "surrounding on all sides" |
| | **"transparent window"** | "see-through area of the plastic film corresponding to the touch screen portion of the handheld electronic device to which the protector is intended to be attached" |
| **Defendants** | **"continuously surrounding the transparent window"** | "closed in on all sides of the transparent window without interruption, so that an enclosed air space is created between the transparent window of the plastic film" |

**1.   The Parties' Proposed Constructions**

The phrase "continuously surrounding the transparent window" appears only in independent Claim 1.  The phrase "transparent window" appears in Claim 15, which depends from Claim 1.  Additionally, the '942 Patent uses the term "window" in Claims 5 and 6.

The parties first dispute whether this phrase should actually be construed as two separate phrases.  Plaintiff contends that this phrase consists of two separate claim terms, "continuously surrounding" and "transparent window," each of which is in need of construction.  Defendants, on the other hand, assert that "continuously surrounding the transparent window" is one claim term that requires only one construction.

Defendants argue that the Court should construe the term "continuously surrounding the transparent window" as a single claim term.  Defendants support this argument by stating that "[i]t makes no sense to separately define 'continuously surrounding' and 'transparent window' . . .." (Defs.' Br. 12:9-15, ECF No. 159.)  Defendants appear to argue that the phrase must be construed as a single term because transparent window is the object that is being continuously surrounded. (*Id.*)  Defendants actually use the phrase "transparent window" to define

"continuously surrounding the transparent window."  Explicitly, Defendants' propose that this

Court construe "continuously surrounding the transparent window" as "closed in on all sides of

the *transparent window* without interruption, so that an enclosed air space is created between the

*transparent window* of the plastic film." (Defs.' Br. 11:27-28 (emphasis added).)  Conflating the

words of the claims in this manner is unhelpful to the finder of fact and violates Federal Circuit

precedent. *See Z4 Techs.*, 507 F.3d at 1348.  For this reason, the Court declines to adopt

Defendants' proposed construction.

Plaintiff, on the other hand, requests that this phrase actually consists of two, separately

construable claims: "continuously surrounding" and "transparent window."  Plaintiff first notes

that the terms "transparent window" and "window" appear elsewhere in the '942 Patent and that

the '942 Patent does not consistently connect these terms with the phrase "continuously

surrounding." *See* '942 Patent col.8, ll.59-67 (Claims 5 and 6), col.1, ll.17-19 (Claim 15).  In

fact, the '942 Patent juxtaposes these two phrases together only once, in Claim 1.  Thus,

Plaintiff argues that "[b]ecause these phrases appear in different claims and are only juxtaposed

once, there is no logical reason that they need to be read and construed together."  The Court

agrees and will, therefore, separately construe the terms "continuously surrounding" and

"transparent window."

### a.    *"continuously surrounding"*

The term "continuously surrounding" appears only once, in Claim 1, to modify the

claimed "spacer." *See* '942 Patent col.8, ll.35-43.  Specifically, part of Claim 1 claims "a spacer

provided along the outer perimeter of the plastic film continuously surrounding the transparent

window . . .." '942 Patent col.8, ll.35-36.

Plaintiff proposes that the Court construe "continuously surrounding" as "surrounding on

all sides."  Defendants object to Plaintiff's construction because it could encompass a "spacer"

that has even minute interruptions.  Rather, as discussed above in Section IV.B.1, Defendants

contend that the Court should construe this phrase as "closed in on all sides of the transparent window *without interruption*, so that an enclosed air space is created between the transparent window of the plastic film." (Defs.' Br. 11:27-28, ECF No. 159.)  At bottom, Defendants argue that "continuously surrounding" cannot encompass a structure that has even the smallest of interruptions.[4]  (*Id.* at 14:1-18.)  Although the Court is currently not persuaded by Defendants' arguments, these arguments are ill-suited for the claim construction stage of litigation because they are aimed at the question of infringement.  Specifically, it appears to the Court that these arguments are aimed at the question of whether the accused device infringes the '942 Patent, either literally or under the doctrine of equivalents.  Nevertheless, the Court finds that "continuously surrounding," when read in the context of the '942 Patent does not require an absolutely uninterrupted quality.  For example, a mountain range that continuously surrounds a mountain range will inevitably have some gaps.  Similarly, a room can still be said to be continuously surrounded by walls, despite the existence of doors.  For these reasons, the Court is not persuaded by Defendants' arguments that "continuously surrounding" must mean "closed in all sides . . . *without interruption*."

Defendants' proposed construction is also problematic because it uses the term "enclosed air space," a term that appears elsewhere in the claims.  In fact, "enclosed air space" is a disputed claim term that is discussed in a later section of this Order.  Because the term "enclosed air space" appears elsewhere in the claims, the Court finds that it is improper and unhelpful to incorporate this phrase into the definition of "continuously surrounding." *See Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1348 (Fed. Cir. 2007) (rejecting a claim construction that

---

[4] To support their proposal, Defendants rely on an alleged "disclaimer" in the scope of the Patent. (Defs.' Br. at 14:19-15:2.)  The '942 Patent, at column 5, lines 11-13, states that "[i]t is also possible, although not preferred, to include adhesive only upon a portion of the perimeter . . ."  From this statement, Defendants conclude that the '942 Patent disclaims a spacer that has any small interruption as it surrounds the transparent window of the touch screen protector.  However, "continuously surrounding," as used in Claim 1 modifies the "spacer." '942 Patent col.8, ll.35-36.  In contrast, the section of the written description to which Defendants refer describes the location of the adhesive, not the "spacer." '942 Patent col. 5, ll.9-17.

incorporated a term found elsewhere in the claim because such a construction would conflict with the words of the claim).  Accordingly, the Court declines to adopt Defendants' proposed construction.

The Court is also not persuaded by Plaintiff's proposed construction and Plaintiff's corresponding arguments.  First, Plaintiff erroneously asserts that the Court has already construed this term in the Court's May 2, 2012 Contempt Order and that, as a result, the alleged construction in that Order is "the law of the case." (Pl.'s Br. 13:23-14:7 (citing Order Grant'g Mot. for Order to Show Cause 8:8-17, ECF No. 65).)  Contrary to Plaintiff's assertion, the Court's May 2, 2012 Order did not address the issue of construing "continuously surrounding." (*See* Order Grant'g Mot. for Order to Show Cause 8:8-17, ECF No. 65.)  In reality, the Court simply found that the allegedly infringing device would likely be found to infringe under the doctrine of equivalents and, thus, a preliminary injunction was warranted because Plaintiff was likely to succeed on the merits. (*Id.*)  Even if the Court had construed this term in the May 2, 2012 Order, Defendants correctly note that "[m]any courts have concluded that '[c]laim construction orders are not final and may be altered by the Court prior to or during trial.'" (Defs.' Br. 12:25-28 (citing *Cisco Sys., Inc. v. Telcordia Techs., Inc.*, 590 F. Supp. 2d 828, 830 (E.D. Tex. 2008)).)  Therefore, this Court is not bound at this stage by a statement made in the prior order that Plaintiff now interprets as a statement on how this term should be construed.

Second, Plaintiff's proposed construction is also problematic because it uses one of the words in the disputed term to define that term.  Specifically, "surrounding" is both part of the disputed term, "continually surrounding," and part of the proposed construction of that term, "surrounding on all sides."  As stated above in Section IV.B.1, conflating the words of the claims in this manner is unhelpful to the finder of fact and violates Federal Circuit precedent. *See Z4 Techs.*, 507 F.3d at 1348.  For these reasons, the Court also declines to adopt Plaintiff's proposed construction.

Having rejected both parties proposed constructions, the Court must now determine the proper construction for the term "continuously surrounding."  After looking to the words of the specification, the Court finds that this term needs no further construction.  The term is well understood in the art and by lay persons and does not have any special meaning in the context of the '942 Patent.

### b.    *"transparent window"*

Because Defendants' proposed construction of "continuously surrounding the transparent window" includes the phrase "transparent window," the Court finds that Defendants have not provided a proposed construction for this term.

Plaintiff, on the other hand, proposes that this term be construed as a "see-through area of the plastic film corresponding to the touch screen portion of the handheld electronic device to which the protector is intended to be attached." (Pl.'s Br. 11:12-15, ECF No. 157.)  To support this proposed construction, Plaintiff first notes that the term "transparent" is commonly understood as "see-through" or "capable of transmitting light so that objects or images can be seen as if there were no intervening material." (*Id.* 12:7-9.)  Such a definition is consistent with the words of the '942 Patent, which describes a device that provides protection for the screen of hand-held electronic touch screen devices. '942 Patent, col.1, ll.10-13.  In order for such a device to function, the protector must allow the user of the device to *see through* the "transparent window" to the screen of the device.

Plaintiff further asserts that because the '942 Patent covers a device designed to protect the touch screen portion of electronic touch screen devices, the "transparent window" must also correspond to the size and shape of the electronic device's touch screen.  The words of the written description support this proposed construction.  Specifically, the '942 Patent states that "the transparent window enables the full operative portion of the touch screen portion [of the electronic device] to be used." '942 Patent col.4, ll.64-66.  Therefore, the "transparent window"

must correspond in size and shape to the touch screen portion of the electronic device.

Because Plaintiff's proposed construction finds support in the specification of the '942 Patent, the Court will construe "transparent window" as "see-through area of the plastic film corresponding to the touch screen portion of the handheld electronic device to which the protector is intended to be attached."

### 2. The Court's Construction

The Court first concludes that "continuously surrounding the transparent window" actually consists of two separate terms: "continuously surrounding" and "transparent window." After looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand "continuously surrounding," as used in the '942 Patent, to have its plain and ordinary meaning. The Court finds that the term "continuously surrounding" requires no further construction.

The Court also finds that a person of ordinary skill in the art would understand "transparent window," as used in the '942 Patent, to mean "see-through area of the plastic film corresponding to the touch screen portion of the handheld electronic device to which the protector is intended to be attached." Therefore, the Court construes the term "transparent window" as "see-through area of the plastic film corresponding to the touch screen portion of the handheld electronic device to which the protector is intended to be attached."

### C. "Enclosed air space"

**Proposed Constructions**

| | |
|---|---|
| **Plaintiff** | "the space created between the touch screen and the protector's transparent window by means of the spacer" |
| **Defendants** | "a space that is closed on all sides and is between the transparent window of the plastic film formed by the plastic film, spacer and touch screen portion of the hand-held electronic device. The enclosed air space is formed when the spacer is attached to the plastic film and the handheld device by an adhesive and the spacer is continuously surrounding the transparent window" |

The term "enclosed air space" appears only in Claim 1 of the '942 Patent.

### 1.    The Parties' Proposed Construction

Both parties agree that this "enclosed air space" is created by the transparent window, the spacer, and the touch screen of the electronic device.  In fact, Plaintiff simply proposes that "enclosed air space" should be construed as "the space created between the touch screen and the protector's transparent window by means[5] of the spacer." (Pl.'s Br. 15:15-16, ECF No. 157.) Thus, the heart of the dispute focuses on whether this space must be, as Defendants assert, "closed on all sides."

Defendants once again propose a verbose construction for a simple term.  Defendants employ sixty-four words to construe this three word term.  To support this construction, Defendants rely on the Court's May 2, 2012 Order and on the words in the specification.  First, Defendants note that the Court previously determined the definition of "enclose" as "surrounding on all sides." (Defs.' Br. 16:17-22 (citing Order Grant'g Mot. for Order to Show Cause 7:24-8:7, ECF No. 65).)  This argument fails for two reasons.  First, this prior Order did not actually engage in claim construction and is, thus, not binding on the instant claim construction dispute.  Second, in the May 2, 2012 Order, the Court clearly indicated that the term "enclosed" did not require an absolute enclosure or any sort of hermetic seal.  Defendants have failed to recognize that the Court also stated in the May 2, 2012 Order that "[s]imply because there are two small openings does not change the fact that air is enclosed between the spacer, the plastic film and the transparent window." (Order Grant'g Mot. for Order to Show Cause 8:5-7, ECF No. 65.)  Therefore, even if the May 2, 2012 Order was binding on this issue, Defendants' arguments would fail.

Defendants also attempt to support their proposed construction by relying on "a related

---

[5] Because the word "means" has a distinct meaning in patent law, *see* 35 U.S.C. § 112(f), the Court omits this word from its construction of this term.

pending application filed by [Plaintiff] that was published on July 19, 2012." (Defs.' Br. 17:7-8, ECF No. 159.)  Specifically, Defendants note that this related application originally used the term "enclosed air space," and Plaintiff later amended the application to employ the term "an air space," and still later Plaintiff further amended the application to simply use the term "a space." (*See* Defs.' Br. Ex. E, at 2, 4, 7, 9, ECF No. 159-7.)  Although this argument is slightly more persuasive than Defendants' first argument, the Court still finds this insufficient to warrant a wholesale adoption of Defendants' proposed construction.  Despite Plaintiff's different word choice in this related patent application, "enclosed air space," as used in the '942 Patent, does not require a space that is fully enclosed without any interruption.

Finally, Defendants' most persuasive argument relies on statements made by the patentee in the Support Document that the patentee filed with its Request for Accelerated Examination pursuant to 37 C.F.R. § 1.155.  In that document, the patentee represented to the USPTO that "the screen protectors disclosed in [the prior art] references are only connected to the display screen or the frame of the screen at certain attachment points without consideration as to the formation of an enclosed air space between the screen protector, the spacer and the touch screen." (Defs.' Br. Ex. C, at 12, ECF No. 159-5.)  This declaration certainly indicates that the air space claimed in Claim 1 must be more enclosed than the space that would be created from having a few attachment points on the frame of the electronic device.  Therefore, the Court concludes that the "enclosed air space" must be a space that is, at minimum, substantially bounded on all sides.

Finally, the Court finds that the second sentence of Defendants' proposed construction is unnecessary and unhelpful.  Much like Defendants' other proposed constructions, the proposed construction for "enclosed air space" employs a separate disputed claim term.  Specifically, the second sentence of Defendants' proposed construction states that "[t]he enclosed air space is formed when the spacer is attached to the plastic film and the handheld device by an adhesive

and the spacer is *continuously surrounding the transparent window*."[6] (Defs.' Br. 18:9-11 (emphasis added).)  Accordingly, the Court declines to employ this second sentence in its construction of "enclosed air space."

### 2.   The Court's Construction

For the reasons stated above, after looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the term "enclosed air space," as used in the '942 Patent to mean "the area that is formed by the touch screen and the protector's transparent window and is substantially bounded on all sides by the spacer."  Therefore, the Court construes the term "enclosed air space" as "the area that is formed by the touch screen and the protector's transparent window and is substantially bounded on all sides by the spacer."

### D.   "Removably mounting"

**Proposed Constructions**

| | |
|---|---|
| **Plaintiff** | "taking the touch screen protector off of the touch screen of the electronic device after it has been placed thereon and attached thereto by its adhesive wherein the protector can be easily removed from the touch screen device"<br>*Alternatively*:  "placing the touch screen protector on the device in such a way that the protector can be easily removed" |
| **Defendants** | "attaching with sufficient adhesiveness to mount the protector onto the device while enabling its removal" |

The term "enclosed air space" appears only in Claim 1 of the '942 Patent.

### 1.   The Parties' Proposed Constructions

Plaintiff originally proposed that the Court construe "removably mounting" as "taking the touch screen protector off of the touch screen of the electronic device after it has been placed

---

[6] As discussed in Section IV.B.1.a, Defendants used the disputed term "enclosed air space" in its proposed construction of "continuously surrounding the transparent window."  Furthermore, "continuously surrounding the transparent window" now appears in Defendants' proposed construction of "enclosed air space."  This type of circular claim construction cannot be correct and is unhelpful to the finder of fact. *See Z4 Techs.*, 507 F.3d at 1348.

thereon and attached thereto by its adhesive wherein the protector can be easily removed from the touch screen device." (Pl.'s Br. 17:6-9, ECF No. 157.)  Thereafter, in its Reply Brief, Plaintiff recognized that its original proposed construction "over-emphasize[d] 'taking . . . off' and under-emphasize[d] 'mounting.'" (Pl.'s Reply Br. 8:5-6, ECF No. 183.)  Consequently, Plaintiff offered an alternative construction that would construe "removably mounting" as "placing the touch screen protector on the device in such a way that the protector can be easily removed."[7] (*Id.* at 7-10.)  Defendants, on the other hand, maintain that the Court should construe this term as "attaching with sufficient adhesiveness to mount the protector onto the device while enabling its removal."

Ultimately, the primary difference between Plaintiff's alternative proposed construction and Defendants' proposed construction is Defendants' inclusion of the concept of adhesion in its proposed construction.  Defendants' proposed construction is incorrect.  Specifically, Defendants' proposed construction violates the doctrine of claim differentiation.  "[T]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).  Here, Claim 2 depends from Claim 1 and additionally requires that the exposed adhesive in Claim 1 "has sufficient adhesiveness to mount the protector onto the device but to enable its removal without leaving adhesive residue on the device." '942 Patent col.8, ll.49-53 (Claim 2).  Defendants' proposed construction of "removably mounting," a term used only in Claim 1, is remarkably similar to the words of

---

[7] Both parties agree, as does the Court, that Plaintiff's original proposed construction is incorrect because it would render the limitation added in dependent Claim 2 meaningless.  Claim 2, which depends from Claim 1, additionally requires that the exposed adhesive "has sufficient adhesiveness to mount the protector onto the device but to enable its removal without leaving adhesive residue on the device." '942 Patent col.8, ll.49-53 (Claim 2). Because Plaintiff's original proposed construction over-emphasized this adhesive quality and the ability to removing the device from the touch screen, it violated the doctrine of claim differentiation. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004).  Thus, the Court rejects Plaintiff's original proposed construction.

dependent Claim 2.  Explicitly, Defendants propose that the Court construe "removably mounting" as "attaching with *sufficient adhesiveness* to mount the protector onto the device while *enabling its removal*." (Defs.' Br. 18:13-16, ECF No. 159 (emphasis added).)  Because of the similarities between the language of Claim 2 and the language of Defendants' proposal, the Court concludes that Defendants' proposed construction is a textbook example of impermissibly reading into independent Claim 1 a limitation that appears in dependent Claim 2. *See Liebel-Flarsheim*, 358 F.3d at 910 ("In such a setting, where the limitation that is sought to be "read into" an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest").

Plaintiff's original proposed construction also violated the doctrine of claim differentiation. (Pl.'s Br. 17:6-9, ECF No. 157 (proposing that the Court construe "removably mounting as "taking the touch screen protector off of the touch screen of the electronic device after it has been placed thereon and attached thereto by its adhesive wherein the protector can be easily removed from the touch screen device").)  Plaintiff's alternative proposed construction, however, eliminates this problem.  Specifically, in its Reply Brief, Plaintiff proposed that the Court construe "removably mounting" as "applying the touch screen protector onto the device such that it can be easily removed." (Pl.'s Reply Br. 8:9-10, ECF No. 183.)  However, the Court finds that Plaintiff's use of the word "removed" is improper in a construction of "*removably* mounting."  Accordingly, the Court adopts a modified version of Plaintiff's proposal.  The Court construes "removably mounting" as "applying the touch screen protector onto the device such that it can be easily taken off of the device."  The Court finds that this construction is "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the

invention will be, in the end, the correct construction").

### 2.    The Court's Construction

For the reasons stated above, after looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the term "removably mounting," as used in the '942 Patent to mean "applying the touch screen protector onto the device such that it can be easily taken off of the device." Therefore, the Court construes the term "removably mounting" as "applying the touch screen protector onto the device such that it can be easily taken off of the device."

### E.    "Provided along the outer perimeter"

**Proposed Constructions**

|  | |
|---|---|
| **Plaintiff** | No claim construction needed; this phrase should be given its plain meaning<br>*Alternatively:*  "located on the area of the plastic film that surrounds the transparent window" |
| **Defendants** | "located on the area adjacent the edges of the plastic film which does not touch the touch screen portion" |

The term "provided along the outer perimeter" appears only in Claim 1 of the '942 Patent.

### 1.    The Parties' Proposed Constructions

Plaintiff contends that this phrase needs no further construction because the phrase appears only once to explain the location of the spacer and "is easily understandable in plain English." (Pl.'s Br. 18:27-19:3, ECF No. 157.)  In the event that the phrase did need construction, Plaintiff provided an alternate proposed construction.  Defendants object to Plaintiff's proposal and argue that both of Plaintiff's proposals "ignore[] the words 'outer perimeter' as they are used in the context of the claims." (Def.'s Br. 21:3-5, ECF No. 159.) Defendants attempt to support their proposed construction by referring to Figure 3 of the '942 Patent and the corresponding language in the written description. (Def.'s Br. 21:10-20, ECF No.

159.)  Specifically, Defendants argue that that their proposed construction should be adopted because it makes it clear that the "outer perimeter" refers to the plastic film itself, not the transparent window of the plastic film. (*Id.* at 11-20 (citing '942 Patent col.7, ll.16-18, Figure 3).)

The Court disagrees that such construction is necessary.  First, the Court finds that one of skill in the art would need no further explanation to determine, based on the words of the claim, where the spacer is located in relation to the plastic film and the transparent window. Furthermore, there is no evidence in the words of the '942 Patent that indicate that the phrase is used in anything other than its ordinary meaning. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute").

Second, after looking at the other words in Claim 1 that surround this disputed term, the Court finds that this phrase does not require the construction proposed by Defendant.  Plaintiff's proposed alternative construction is similarly unnecessary.  Claim 1 explicitly states that the spacer is "provided along the outer perimeter *of the plastic film*."  Accordingly, a proper construction of "provided along the outer perimeter" need not include such a limitation; this limitation is already found in the claim language.  For these reasons, the Court finds that "provided along the outer perimeter" needs no further construction; this term will be given its plain and ordinary meaning.

## 2.    The Court's Construction

After looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the '942 Patent to use the phrase "provided along the outer perimeter" in accordance with that phrase's

plain meaning.  This phrase needs no further construction.

**F.   "Coating"**

**Proposed Constructions**

| Plaintiff | No claim construction needed; this term should be given its plain meaning |
|---|---|
| Defendants | "a layer of substance spread over a surface; a covering layer" |

The term "provided along the outer perimeter" appears only in Claim 15 of the '942 Patent, which depends from Claim 1.  Specifically, Claim 15 claims "[t]he touch screen protector of claim 1, wherein the transparent window is clear but includes a *coating* that provides a matte effect or a privacy screen feature." '942 Patent col.10, ll.17-19 (Claim 15) (emphasis added).

**1.   Defendants' Proposed Construction**

Defendants propose that the Court construe "coating" as "a layer of a substance spread over a surface." (Defs.' Br. 22:3, ECF No. 159.)  For the reasons discussed below, the Court finds that Defendants' proposed construction violates the rules of claim construction and contradicts the language of the intrinsic record.

To support their construction, Defendants rely on one embodiment disclosed in the '942 Patent. (*Id.* at 22:21-23:2.)  This embodiment refers to a "surface treatment" or "top layer treatment" coated on the plastic film. '942 Patent col.4, ll.16-21.  From this preferred embodiment, Defendants conclude that "[c]learly, a coating is meant to be understood as a layer of a substance that may be spread over a surface such as the plastic film of a screen protector." (Defs.' Br. 22:28-23:2.)  However, this reference to a single embodiment followed by such a conclusory statement does not adequately support Defendants' proposed construction.

First, this embodiment provides no evidence that such a "coating" must be a "*substance spread* over a surface" as provided in Defendants' proposed construction.  In fact, Defendants

have failed to provide, and the Court is unable to locate, a single use of the word "spread" in the intrinsic record. Thus, construing this claim term in the manner requested by Defendants would require the Court to arbitrarily insert limitations that are wholly absent from the intrinsic record.

Second, even if this embodiment did provide evidence supporting a construction of the term "coating" that required a "layer" that was somehow located only on the "surface" of the plastic film, the Federal Circuit has repeatedly instructed that courts should not limit claim language to a preferred embodiment. *See Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The claims, not specification embodiments, define the scope of patent protection. The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims"); *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"). Because the language of the claims and the language of the remainder of the specification do not require that the coating is "a layer of a substance spread over a surface," the Court cannot impose limitations that might appear in the single embodiment on which Defendants rely.

Finally, the words of the specification actually contradict Defendants' proposed construction. Specifically, the written description contemplates applying a micro-particle treatment over, at least, 5% of the plastic film. '942 Patent col.4, ll.48-54. The statement in the written description undercuts Defendants' argument that the "coating" must be a "layer." Similarly, the '942 Patent discloses that the coating is not limited to a "layer" because a micro-particle coating on the plastic film "can be of various shapes, such as the column shape and the wave shape." '942 Patent col.4, ll.42-44. This disclosure also contradicts Defendants' argument that "coating" must be a "layer." Additionally, this language undercuts Defendants' assertion that the "coating" is "spread" over the plastic film. Lastly, the '942 Patent also teaches that

these micro-particles need not be located on the outer surface, as Defendants' proposed construction would require; the micro-particles can be located on "the inner side of the film." '942 Patent col.4, ll.42-43. This teaching from the written description establishes that the "coating" is not necessarily located on the "surface," as required by Defendants' proposed construction. For these reasons, the Court finds that Defendants' proposed construction is incorrect.

### 2. Plaintiff's Proposed Construction

Plaintiff, on the other hand, contends that this phrase needs no further construction because the '942 Patent's usage of this term is "perfectly straightforward." (Pl.'s Br. 20:18-19, ECF No. 157.) Additionally, Plaintiff argues, the specification uses the term according to its plain and ordinary meaning; the specification does not suggest an alternate meaning. (*Id.* at 20:19-20.) The Court agrees.

Defendants' arguments fail to persuade the Court otherwise. Specifically, Defendants contend that this term needs construction merely because "[although] touch screen protectors may be familiar to many potential jurors, they may not know what is meant by a coating on a touch screen protector because such coatings are easily seen." The Court disagrees that any such construction is necessary. First, the Court finds that one of skill in the art would need no further explanation to understand the concept of a coating on the transparent window that provides a matte effect or a privacy screen feature. Furthermore, there is no evidence in the words of the '942 Patent that indicate that the phrase is used in anything other than its ordinary meaning. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute").

/ / /

### 3.    The Court's Construction

After looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the '942 Patent to use the term "coating" in accordance with that phrase's plain meaning.  This phrase needs no further construction.

### G.   "Micro-particles"

**Proposed Constructions**

| | |
|---|---|
| **Plaintiff** | "the small elements resulting from a surface treatment, such as a matte finish, for the plastic film of a screen protector that achieves anti-glare effects and/or anti-static effects" |
| **Defendants** | "microscopic particles adhered to the transparent window of a screen protector to achieve anti-glare effects and/or anti-static effects" |

The term "provided along the outer perimeter" appears in Claims 5 and 6 of the '942 Patent.

### 1.    Defendants' Proposed Construction

Defendants propose that the Court construe "micro-particles" as "microscopic particles adhered to the transparent window of a screen protector to achieve anti-glare effects and/or anti-static effects." (Defs.' Br. 23:7-8, ECF No. 159.)  For the reasons discussed below, the Court declines to wholly adopt Defendants' proposed construction.  However, as discussed below, the Court adopts the portion of Defendants' proposed construction that requires that these micro-particles be located on the plastic film of a screen protector.

To support their proposed construction, Defendants cite column three, lines sixteen through twenty-four of the '942 Patent.  However, the language of the written description that Defendants quote in their brief actually appears in two different locations in the written description of the '942 Patent, neither of which are located at column three, lines sixteen through twenty-four.  Defendants first quote column four, lines fifty-four through fifty-seven: "The micro-particles can be made of any transparent material commonly known in the art.

Preferably, the micro-particles are made of [polyethylene terephthalate (PET)] so that they are compatible with the film material." Defendants next quote column four, lines sixteen through twenty-four:

> In one embodiment, the plastic film is coated to have a 'matte' or anti-glare effect. Surface treatment such as EZ- GLIDE™ top layer treatment further allows better touch screen portion maneuverability and effectively reduces finger glide friction on the touch screen portion of the hand held device. EZ-GLIDE™ treatment is a technology in which the outer side of the screen protector, i.e., the side that contacts the hand, has micro-particles that reduce static effects, which allows the hand to move smoothly on the screen protector.

From these passages, Defendants conclude that the construction of "micro-particles" must include the language "microscopic particles adhered to the transparent window of a screen protector."

The Court only partially agrees. The Court does agree that the claimed micro-particles are located on the plastic film of the screen protector. However, Defendants have failed to cite to intrinsic evidence to support its assertion that the micro-particles must be *adhered* to the transparent window. In fact, the claim language dictates just the opposite. Specifically, Claim 6, which depends from Claim 5, expressly claims micro-particles that are *adhered* to the transparent window. *Compare* '942 Patent col.8, ll.59-63 (Claim 5) *with* '942 Patent col.8, ll.64-67 (Claim 6). Therefore, the "micro-particles" of both Claims 5 and 6 must be broad enough to encompass micro-particles that are adhered to the transparent window and micro-particles that are put on the transparent window by some other mechanism.

Furthermore, Defendants have provided insufficient evidence that "micro-particles" refer to *microscopic* particles, rather than, as Plaintiff contends, small particles. To support its argument, Defendants merely state that "throughout the specification the particles are always identified as 'micro' and never identified as being 'small.' Consequently, the specification only supports the size requirements in Defendants' proposed construction." (Defs.' Br. 24:5-10, ECF

No. 159.)  The Court finds this argument unpersuasive.  Thus, the Court also declines to adopt

the requirement that the "micro-particles" consist of *microscopic* particles.

### 2.   Plaintiff's Proposed Construction

Plaintiff, on the other hand, asserts that the Court should construe "micro-particles" as

"the small elements resulting from a surface treatment, such as a matte finish, for the plastic film

of a screen protector that achieves anti-glare effects and/or anti-static effects." (Pl.'s Br. 21:16-

18.)  However, much of this proposed construction is unnecessary because it is redundant of the

claim language.  Specifically, Claim 5 claims "[t]he touch screen protector of claim 1, wherein

micro-particles are present on the back side of the plastic film at a density which is sufficiently

high to *provide an anti-static effect* without adversely affecting quality of images viewed

through the window." '942 Patent co.8, ll.59-63 (Claim 5) (emphasis added).  Similarly, Claim 6

claims "[t]he touch screen protector of claim 5, wherein the plastic film also includes micro-

particles adhered to the front side of the window in an amount effective for *providing anti-glare*

*and anti-static effects* to the window." '942 Patent col.8, ll.64-67 (Claim 6) (emphasis added).

Thus, any reference in the construction of "micro-particles" to anti-glare or anti-static effects is

redundant of the actual claim language, and thus, unnecessary.

After omitting the references to anti-glare and anti-static effects, the remaining portion of

Plaintiff's proposed construction would define "micro-particles" as "the small elements resulting

from a surface treatment, such as a matte finish, for the plastic film of a screen protector."  This

construction is still unnecessarily complex and imports the unnecessary concepts of "surface

treatment" and "matte finish."  Neither the claims nor the remainder of the specification indicate

that these concepts must be included in a proper construction of "micro-particles."  Accordingly,

the Court concludes that a better construction for "micro-particles" is "small particles located on

the plastic film of a screen protector."

/ / /

### 3.   The Court's Construction

For the reasons stated above, after looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the term "micro-particles," as used in the '942 Patent to mean "the small elements located on the plastic film of a screen protector."   Therefore, the Court construes the term "micro-particles" as "the small elements located on the plastic film of a screen protector."

### H.   "Adhesive Strip"

**Proposed Constructions**

| | |
|---|---|
| **Plaintiff** | No claim construction needed; this term should be given its plain meaning <br> *Alternatively:* a strip of adhesive |
| **Defendants** | "a long narrow piece of adhesive" |

The term "adhesive strip" appears only in Claim 8 of the '942 Patent.   Specifically, Claim 8 claims "[t]he touch screen protector of claim 5, wherein the spacer includes at least one adhesive strip that is applied onto the plastic film, wherein the adhesive strip is opaque." '942 Patent col.9, ll.7-9 (Claim 8).

### 1.   The Parties' Proposed Construction

Defendants propose that the Court construe "adhesive strip" as "a long narrow piece of adhesive." (Defs.' Br. 22:3, ECF No. 159.)   Defendants support this construction by quoting the language of Claim 8: "the spacer includes at least one adhesive strip that is applied onto the plastic film, wherein the adhesive strip is opaque." (Defs.' Br. 25:2-4, ECF No. 159.)   After quoting this claim language, Defendants conclude that the "adhesive strip" must correspond to the shape and size of the spacer. (*Id.* at 25:4-6.)   The Court disagrees.   Defendants' conclusion ignores the claim language that states that "the spacer includes *at least one* adhesive strip . . .." *See* '942 Patent, col.9, ll.7-8.   This language establishes that the spacer could, but need not, correspond to the shape and size of the spacer.   The adhesive strip could be smaller than, shorter

than, or differently shaped from the spacer.

Plaintiff, on the other hand, contends that "adhesive strip" is a "plain-vanilla phrase" that needs no further construction. (Pl.'s Br. 22:25-23:7, ECF No. 157.)  Plaintiff argues that the specification uses the term according to its plain and ordinary meaning; the specification does not suggest an alternate meaning. (*Id.* at 23:9-11.)  The Court agrees that no construction is necessary.

Defendants fail to provide a persuasive argument for why a person of ordinary skill in the art would need further explanation to understand the concept of an adhesive strip used to attach the spacer and the plastic film.  There is no evidence in the words of the '942 Patent that indicates that the patentee intended to use this phrase in anything other than its ordinary meaning. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute").

## 2.   The Court's Construction

After looking first to the words of the claim and then the remaining parts of the specification, the Court finds that a person of ordinary skill in the art would understand the '942 Patent to use the phrase "adhesive strip" in accordance with that phrase's plain meaning.  This phrase needs no further construction.

## V.   CONCLUSION

**IT IS HEREBY ORDERED** that the fifteen (15) claim terms submitted by the parties are construed as contained within this Order.  The Court construes the primary nine (9) disputed claim terms in U.S. Patent No. 8,044,942 as follows:

/ / /

/ / /

| "spacer" | an element or elements located on the back of the plastic film of the touch screen protector having a thickness such that the protector is close to, but not in contact with, the touch screen portion |
| --- | --- |
| "continuously surrounding" | plain meaning; no further construction needed |
| "transparent window" | see-through area of the plastic film corresponding to the touch screen portion of the handheld electronic device to which the protector is intended to be attached |
| "enclosed air space" | the area that is formed by the touch screen and the protector's transparent window and is substantially bounded on all sides by the spacer |
| "removably mounting" | applying the touch screen protector onto the device such that it can be easily taken off of the device |
| "provided along the outer perimeter" | Plain and ordinary meaning |
| "coating" | Plain and ordinary meaning |
| "micro-particles" | the small elements located on the plastic film of a screen protector |
| "adhesive strip" | Plain and ordinary meaning |

**IT IS FURTHER ORDERED** that this case shall be referred to Magistrate Judge Koppe for the setting of the Post-Claim Construction Order Settlement Conference pursuant to Local Rule 16.1-19(b).

**DATED** this 14th day of May, 2013.

_____
Gloria M. Navarro
United States District Judge