1

2

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

3

4

| | |
|---|---|
| AEVOE CORP., a California corporation,    ) | |

AEVOE CORP., a California corporation,    )
           )
     Plaintiff,     )   Case No.: 2:12-cv-00053-GMN-NJK
   vs.      )
           )   **ORDER**
AE TECH CO., LTD., a Taiwan corporation;   )
S&F Corporation dba SF PLANET   )
CORPORATION, a Minnesota corporation,   )
and GREATSHIELD INC., a Minnesota   )
corporation,     )
     Defendants.    )
           )

     Pending before the Court is the Motion for Partial Summary Judgment (ECF No. 412) filed by Plaintiff Aevoe Corp. ("Plaintiff").  Defendants AE Tech Co., Ltd., Greatshield Inc., and S&F Corporation (collectively, "Defendants") filed a Response (ECF No. 445) and Plaintiff filed a Reply (ECF No. 470).

# I.   <u>BACKGROUND</u>

     Plaintiff Aevoe Corp. ("Plaintiff") is the sole owner of United States Patent No. 8,044,942 ("the '942 Patent") entitled "Touch Screen Protector." (Am. Compl. ¶¶ 13-14, ECF No. 44.)  Plaintiff is a California corporation (Oh Decl. Ex. 1, ECF No. 367-1) that markets and sells products embodying the '942 Patent throughout the United States.  The invention of the '942 Patent relates to a touch screen protector for hand-held electronic devices. U.S. Patent No. 8,044,942, at [57] (filed June 14, 2011).  Specifically, the '942 Patent discloses a touch screen protector that does not physically contact the touch screen portion of the device. *Id.* Additionally, the touch screen protector disclosed in the '942 Patent is "easily attached and removed" from the hand held device. '942 Patent, col.1, ll.10-13.

     In this action, Plaintiff alleges that three defendants, AE Tech, Greatshield, and S&F

Corporation, have directly infringed the '942 Patent. (Am. Compl. ¶¶ 7–12, 36; Oh Decl. Ex. 2, ECF No. 324-3.)  Neither party disputes that Defendant AE Tech "made and sold touch screen protectors under the Acase name" and that these products were sold for Apple iPhone 4 and Apple iPad 2 devices. (Pl.'s Mot. for Summ. J. 5:7–11, ECF No. 412 (citations omitted)).  In addition, neither party disputes that "AE Tech also sold these same touch screen protectors under the Greatshield EZseal name to S&F Corporation and Greatshield" and that Defendants sold these products for Apple iPhone 4, Apple iPad 2, and Amazon Kindle Fire devices.[1] (*Id.* at 5:12–14 (citations omitted)).  Plaintiff maintains that these products infringe Claims 1–3, 5–8, and 11–15 of the '942 Patent ("the Asserted Claims").

Subsequently, after the Court enjoined the sale of the Original Products, Defendants began selling "redesigned" versions of the Original Products ("Redesigned Products"). (*See generally* Order Grant'g Pl.'s Mot. for Order to Show Cause, ECF No. 65.)  The Court later determined that the sale of these Redesigned Products constituted a violation of the Preliminary Injunction. (*See id.*)  Plaintiff asserts, and Defendants do not dispute, that the sole distinction between the Original Products and the Redesigned Products is the presence of an "S-channel" through the adhesive. (Pl.'s Mot. for Summ. J. 10:1–8.)   Plaintiff now asserts that these Redesigned Products also infringe the Asserted Claims of the '942 Patent. (*Id.* at 10:1–6.)

Based on the Court's construction of the disputed claim terms (*see* May 14, 2013 Order, ECF No. 287) and the discovery conducted in this case, Plaintiff now requests that the Court enter summary judgment of infringement, no invalidity, and the amount of damages to which Plaintiff is entitled for the alleged infringement.  As discussed below, the Court finds that Plaintiff's Motion should be GRANTED on the issue of infringement based on a comparison of the construed claims of the '942 Patent with the accused product, the report of Plaintiff's

---

[1] The Court refers to the original AE Tech and S&F Corporation/Greatshield products, collectively as "the Original Products."

expert, Dr. Kazmer, and Defendants' failure to provide any competent evidence to rebut Plaintiff's initial showing of infringement.  The Court further concludes that Plaintiff's Motion should be GRANTED on the issue of validity because Defendants have failed to provide sufficient evidence from which the Court can conclude that Defendants are able to carry their burden of establishing invalidity by clear and convincing evidence.  Finally, the Court DENIES Plaintiff's Motion on the issue of the amount of damages because genuine issues of material fact remain for the jury to determine.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

1    *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In

2    contrast, when the nonmoving party bears the burden of proving the claim or defense, the

3    moving party can meet its burden in two ways: (1) by presenting evidence to negate an

4    essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

5    party failed to make a showing sufficient to establish an element essential to that party's case

6    on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–

7    24.  If the moving party fails to meet its initial burden, summary judgment must be denied and

8    the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

9    398 U.S. 144, 159–60 (1970).

10          If the moving party satisfies its initial burden, the burden then shifts to the opposing

11   party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

12   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

13   the opposing party need not establish a material issue of fact conclusively in its favor.  It is

14   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

15   parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

16   *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

17   summary judgment by relying solely on conclusory allegations that are unsupported by factual

18   data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

19   beyond the assertions and allegations of the pleadings and set forth specific facts by producing

20   competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

21          At summary judgment, a court's function is not to weigh the evidence and determine the

22   truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

23   The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

24   in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

25   not significantly probative, summary judgment may be granted. *See id.* at 249–50.

III.     **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT**

Having previously construed the disputed claim terms of the '942 Patent, the Court now must address the second step in the infringement analysis: the comparison of the construed claims to the allegedly infringing device. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998).

To succeed on its claim of patent infringement, Plaintiff must carry its burden of establishing, by a preponderance of the evidence, that the accused products either literally infringe the claims of the '942 Patent or infringe the claims of the '942 Patent under the doctrine of equivalents.  The allegedly infringing products at issue in this case include AE Tech's Acase Aplus products for Apple iPhone 4 and Apple iPad 2 devices and Greatshield EZSeal product for Apple iPhone 4, Apple iPad 2, and Amazon Kindle Fire devices (collectively, "Original Products). (Pl.'s Mot. for Summ. J. 5:7–14, ECF No. 412.)  In addition, Plaintiff asserts that Defendants' redesigned Greatshield EZSeal and the redesigned AE Tech Acase Aplus products (collectively, "Redesigned Products") also infringe the '942 Patent. (*Id.* at 10:1–6; *see generally* Order Grant'g Pl.'s Mot. for Order to Show Cause, ECF No. 65.)

Plaintiff now asserts that summary judgment of literal infringement is appropriate on the Original Products and the Redesigned Products.  Plaintiff also argues that, if the Court finds that summary judgment of literal infringement is not appropriate on the Redesigned Products, that summary judgment of infringement is still appropriate under the doctrine of equivalents. Because Plaintiff would bear the burden of proof of trial, Plaintiff must come forward with evidence that would entitle it to a directed verdict of infringement if the evidence went uncontroverted at trial; Plaintiff "has the initial burden of establishing the absence of a genuine issue of fact." *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480; *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001) (recognizing that summary judgment on the issue of infringement is proper "when no reasonably jury could find that every limitation recited in the

properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents").

### A.    Original Products

Plaintiff first asserts that the Original Products literally infringe the Asserted Claims. (Pl.'s Mot. for Summ. J. 16:21–23.)  "To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims.  If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (citation omitted).  Here, Plaintiff has carried its initial burden by providing an expert report by Plaintiff's expert, Dr. Kazmer, and providing a descriptive claim chart that lists the limitations in the asserted claims and where each of those limitations is found in the Original Products. (Pl.'s Mot. for Summ. J. 5:17–9:27.) For example, Claim 1 recites:

> A touch screen protector for a hand held electronic device having a front face that includes a touch screen portion and an outer perimeter comprising:
>> a plastic film having front and back sides, an outer perimeter that corresponds to that of the device, and a transparent window that corresponds in size to the touch screen portion; and
>> a spacer provided along the outer perimeter of the plastic film continuously surrounding the transparent window, having a thickness sufficient to space the plastic film near but not in contact with the touch screen portion, and an exposed adhesive for removably mounting the protector upon the outer perimeter of the front face to form an enclosed airspace between the transparent window of the plastic film, the spacer and the touch screen portion of the device;
> wherein the window can be pressed against the touch screen portion for operation of the electronic device while preventing direct contact of a user's fingers with the touch screen portion and without producing visible interference patterns during use.

'942 Patent col.8, ll.28–48.  The detailed comparisons in Dr. Kazmer's Report and in Plaintiff's claim chart provide sufficient evidence to shift the burden from Plaintiff to Defendants to establish the existence of a genuine issue of material fact as to infringement of any of the asserted claims.

Defendants attempt to carry this burden by asserting that summary judgment of literal infringement is improper because one of the limitations in claim 1 of the '942 Patent is absent from the Original Products. (Defs.' Resp. 5:22–7:12, ECF No. 445.) *See also Mas-Hamilton Grp*, 156 F.3d at 1211 ("If even one [claim] limitation is missing [from the allegedly infringing product] . . . , there is no literal infringement.").  Specifically, Defendants argue that the Original Products do not form an "enclosed airspace," as required by the claims of the '942 Patent. *See, e.g.*, '942 Patent col. 8, ll.39–44.  However, Defendants' rely exclusively on arguments of counsel for this position without pointing to any admissible evidence that supports this theory.  In contrast, Plaintiff provided a thorough comparison of the products and also cited to the supporting report of Dr. Kazmer, which concludes that the Original Products form an "enclosed air space" as claimed in the '942 Patent.  Specifically, when one of the Original Products is attached to a touch screen device using the exposed adhesive, an enclosed air space is formed between a transparent window of a plastic film, a spacer,[2] and the touch screen portion of the device.  Defendants also appear to assert that the Original Products do not form an enclosed airspace as required by the claims of the '942 Patent because any such space is not "sealed."  However, the Court previously rejected this argument during the claim construction stage of this litigation. (May 14, 2013 Order 18:16–21, ECF No. 287 (noting that the words of the '942 Patent do not require a construction of the term "enclosed" that would "require an absolute enclosure or any sort of hermetic seal").)  Accordingly, Defendants have failed to provide any evidence that creates a genuine issue of material fact as to whether an enclosed air space is formed when one of the Original Products is mounted on to the touch

---

[2] Defendants seem to argue that because the spacer in their product is made of a "paint layer," as Dr. Kazmer describes it (Kazmer Report ¶ 38, ECF No. 422-1; *see generally id.* ¶¶ 33–38), that their products cannot infringe the claims of the '942 Patent.  The Court disagrees.  Defendants have pointed to no language in the patent that would prevent the claimed "spacer" from being made from a paint layer.  Thus, not only is this an argument more appropriately raised at the claim construction stage of the litigation, Defendants have also failed to point to any evidence to support this argument such that summary judgment would be precluded.

screen portion of the device.  Because this is Defendants' sole argument to overcome Plaintiff's

assertion that the Original Products infringe claims 1–3, 5–8, and 11–15 of the '942 Patent, the

Court finds that Defendants have failed to rebut Plaintiff's showing that no genuine issues of

material fact remain for trial and Plaintiff's Motion, as it relates to the issue of infringement by

the Original Products, is GRANTED.

### B.    Redesigned Products

Plaintiff also contends that there are no remaining issues of fact that preclude summary

judgment on Plaintiff's claim that Defendants' Redesigned Products also infringe the Asserted

Claims.  Plaintiff asserts, and Defendants do not dispute, that the sole distinction between the

Original Products and the Redesigned Products is the presence of an "S-channel" through the

adhesive.  Plaintiff first argues that it is entitled to summary judgment of infringement because

the Redesigned Products literally infringe the Asserted Claims.  Alternatively, Plaintiff argues

that the Redesigned Products infringe under the doctrine of equivalents.  The Court cannot

agree with Plaintiff that there are no genuine issues of material fact as to whether the

Redesigned Products literally infringe the Asserted Claims.  Specifically, a reasonable juror

could determine that the Redesigned Products lacks an element that literally corresponds to the

requirement that the spacer "continuously surround[s] the transparent window," as required by

the Asserted Claims, because the small, "S-channel" of the Redesigned Products is too

substantial of an interruption in the spacer.  Although Plaintiff asserts that the S-channel

interrupts only the adhesive, and not the spacer, the Court finds that a reasonable juror could

disagree.  Nevertheless, the Court still finds that Plaintiff has carried its initial burden of

demonstrating that the Redesigned Products infringe the Asserted Claims under the doctrine of

equivalents.

"A device that does not literally infringe a claim may nonetheless infringe under the

doctrine of equivalents if every element in the claim is literally or equivalently present in the

accused device." *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997). To determine whether a "substituted element" in the accused product that prevents the product from literally infringing nevertheless infringes under the doctrine of equivalents, courts focus on "[w]hether the substitute element (1) has substantially the same function as the recited element, (2) achieves that function in substantially the same way, and (3) achieves substantially the same result." *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1380 (Fed. Cir. 2013). Put simply, "the accused and claimed elements are equivalent if there are only 'insubstantial differences' between them." *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 700 (Fed. Cir. 2014) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 (1997)). Above all, however, a district court must analyze "the role played by each element in the context of the specific patent claim" when determining "whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element." *Warner-Jenkinson*, 520 U.S. at 40.

Because the presence of the "S-channel" is the only difference between the Original Products and the Redesigned Products, the Court need only discuss whether this alteration affects Plaintiff's infringement claim. The Court has previously recognized that a reasonable juror could determine that the "S-channel" interrupts the spacer. The Court further acknowledges that, according to the claims of the '942 Patent, the spacer must "continuously surround" the transparent window. Thus, Plaintiff is entitled to summary judgment of infringement under the doctrine of equivalents only if a spacer with an S-channel is an insubstantial difference from a spacer that continuously surrounds the transparent window. However, even to the extent the "S-channel" constitutes a "break" in the continuously surrounding spacer incorporated in the Redesigned Products, this spacer plays an identical "role" to the spacer claimed in the '942 Patent; the spacer of the Redesigned Products with the

"S-channel" still acts to separate the plastic film from the touch screen portion of a touch screen device. *See Warner-Jenkinson*, 520 U.S. at 40 (concluding that one of the touchstones of the equivalents inquiry is "whether the substitute element plays a role substantially different from the claimed element").  Furthermore, Dr. Kazmer's report discusses, in detail, how the S-channel has no effect on the "continuously surrounding" spacer in "1) visual aesthetics, 2) screen protection, 3) adhesion, 4) spacing between the transparent window and touch screen, and 5) provision of an enclosed air space." (Kazmer Report ¶ 48, ECF No. 422-1; *see generally* ¶¶ 49–58.)  Based on Dr. Kazmer's Report, Plaintiff has submitted sufficient evidence that the addition of an S-channel in the spacer or adhesive is an insubstantial difference.

Put differently, even if the S-channel was determined to affect the spacer, Plaintiff has carried its burden of establishing that the spacer, nevertheless, performs substantially the same function, in substantially the same way, with substantially the same result. *See Charles Mach. Works*, 723 F.3d at 1380.  Specifically, neither party disputes that the spacer functions to elevate the transparent window and prevent the transparent window from contacting the touch screen portion of the device.  Similarly, neither party disputes that the spacer in the Redesigned Products, as in the '942 Patent, allows the touch screen protector to serve its protective function, without creating air bubbles or causing interference patterns when the user engages the touch screen.  However, it does appear that the parties dispute whether the spacer of the Redesigned Products accomplishes the elevation function in substantially the same way.

Defendants recognize that the spacer in their Redesigned Products accomplishes this function by being attached to the underside of the outer perimeter of the plastic film and then being mounted on the outer perimeter of the device.  However, Defendants essentially assert that the "S-channel" prevents the spacer from "continuously surrounding the transparent window" and that, as such, the spacer accomplishes the elevation function in a substantially different way.  The Court disagrees.  The difference between the Redesigned Products and the

1    spacer claimed in the '942 Patent is not sufficiently substantial to avoid infringement.

2    Furthermore, Defendants have provided no evidence that the S-Channel has any effect on the

3    function of the spacer.

4            Defendants make three additional arguments in an attempt to overcome Plaintiff's

5    evidence.  First, Defendants assert that the S-channel prevents the formation of an "enclosed air

6    space" when the Redesigned Products are attached to a touch screen device.  However, merely

7    stating this difference is insufficient to preclude summary judgment.  Rather, Defendants must

8    present evidence that the addition of the S-channel is more than just an "unimportant and

9    insubstantial change" made to avoid infringement. *See Graver Tank & Mfg. Co. v. Linde Air*

10   *Prods. Co.*, 339 U.S. 605, 607 (1950) ("[T]o permit imitation of a patented invention which

11   does not copy ever literal detail would be to convert the protection of the patent grant into a

12   hollow and useless thing.  Such a limitation would leave room for—indeed encourage—the

13   unscrupulous copyist to make unimportant and insubstantial changes.").  Thus, Defendants'

14   first argument fails to rebut Plaintiff's evidence.

15           In addition, Defendants rely on *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d

16   1091, 1104–07 (Fed. Cir. 2000) in which the Federal Circuit found that summary judgment of

17   infringement under the doctrine of equivalents was improper where the patent claimed an

18   adhesive strip that extended "a majority of the length," and, in contrast, the accused product

19   incorporated an adhesive strip that extended only a minority of the length.  Essentially,

20   Defendants appear to argue that the Court would be vitiating the claim requirement that the

21   spacer continuously surround the transparent window if the Court found that the Redesigned

22   Products with the S-channel was equivalent to a spacer without such a channel.  However, the

23   majority claim limitation at issue in *Moore* readily leant itself to line drawing.  As such, the

24   Federal Circuit was unable to agree with the patentee in that case when it argued that an

25   "undisputed[]" minority could be equivalent to a majority. *Moore*, 229 F.3d at 1106 ("[I]t

1  would defy logic to conclude that a minority—the very antithesis of a majority—could be

2  insubstantially different from a claim limitation requiring a majority, and no reasonable juror

3  could find otherwise.").

4         In the instant case, however, the requirement that the spacer "continuously surround" the

5  transparent window is not as not as amenable to line drawing as the "majority length" limitation

6  at issue in *Moore*.  Furthermore, the Court's prior decisions in this case, in which the Court

7  recognized that the spacer need not be completely uninterrupted to satisfy the continuously

8  surrounding requirement, soundly foreclose Defendants' argument.  In fact, when Defendants

9  proposed that the Court construe "continuously surrounding" as "closed in on all sides . . .

10  without interruption," the Court rejected the proposed construction by noting that "a room can

11  still be said to be continuously surrounded by walls despite the existence of doors." (Claim

12  Construction Order  14:11–15, ECF No. 287.)

13         Finally, Defendants argue that the S-channel prevents the Redesigned Product from

14  forming an "enclosed air space," as claimed by the '942 Patent.  However, the Court's

15  construction of the term "enclosed air space" forecloses this argument.[3]  Specifically, the Court

16  construed "enclosed air space" as "the area that is formed by the touch screen and the

17  protector's transparent window and is substantially bounded on all sides by the spacer." (Claim

18  Construction Order 20:9–11; *see also id* at 18:16–20 (recognizing that "the term 'enclosed'

19  d[oes] not require an absolute enclosure or any sort of hermetic seal")); Order Grant'g Pl.'s Mot.

20  for Order to Show Cause 8:5–7, ECF No. 65 ("Simply because there are two small openings

21  does not change the fact that air is enclosed between the spacer, the plastic film and the

22

23  _____

24  [3] Plaintiff also argues, and Defendants do not dispute, that Defendants failed to present this basis for
noninfringement in their Noninfringement Contentions or any subsequent amended contentions, as required by
Rule 16.1-8(a) and Rule 16.1-12 of the Local Rules of Practice for the United States District Court for the

25  District of Nevada.  However, because the Court's Claim Construction Order forecloses this argument, the Court
need not address whether Defendants' failure to include this argument in its noninfringement contentions would
bar Defendants from raising this argument to defeat Plaintiff's summary judgment motion.

transparent window.").)  Moreover, Dr. Kazmer's tests confirm that the Redesigned Products, with their incorporation of the S-channel, are no less hermetically sealed than the Original Products.  (*Id.* ¶¶ 55–56.)  Therefore, any alteration to the spacer that occurred when Defendants added the S-channel had an insubstantial effect on the function, way, and result of the spacer claimed in the '942 Patent.

As such, the Court finds that Plaintiff carried its initial burden, and Defendants have failed to carry their burden of establishing the existence of a fact question.  No reasonable juror could conclude, based on the record before the Court, that the spacer with the S-channel plays a substantially different role from the spacer claimed in the '942 Patent.  For these reasons, the Court concludes that Plaintiff is entitled to summary judgment that the Redesigned Products infringe the Asserted Claims under the doctrine of equivalents.

## IV.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY

Whether a patent claim is invalid as anticipated is a question of fact.  *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005).  Although the question of whether a claim is invalid as obvious is a question of law, the resolution of this question is based on the four underlying factual inquiries identified in *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966). *See, e.g.*, *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1354–55 (Fed. Cir. 1999).  Because issued patents enjoy a presumption of validity, the party seeking to establish invalidity bears the burden of proving invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2244–52 (2011); *see also* 35 U.S.C. § 282 ("A patent shall be presumed valid.").

In its Motion for Summary Judgment, Plaintiff notes that Defendants failed to provide testimony from a witness that fits within Plaintiff's definition of a person of skill in the art.  (Mot. for Summ. J. 24:22–25:4, ECF No. 412.)  Plaintiff now argues that this failure is "fatal" to Defendants' attempts to invalidate the '942 Patent. (*Id.*)  Plaintiff essentially argues that

Defendants have failed to put forth any admissible evidence that would enable them to carry their burden of establishing invalidity by clear and convincing evidence at trial.[4]  Because Plaintiff would not carry the ultimate burden at trial on this issue, Plaintiff's assertions are sufficient to shift the burden to Defendants. *See Celotex Corp.*, 477 U.S. at 323–24 (noting that when the *nonmoving* party bears the burden of proof on a claim or defense, the moving party may shift the summary judgment burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to the nonmoving party's case).

In an attempt to carry their burden, Defendants first assert that they are under no obligation to provide expert testimony because the underlying technology in this case is easily understandable. (Resp. 23:12–28, ECF No. 445); *see also Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004) ("In many patent cases, expert testimony will not be necessary because the technology will be easily understandable without the need for expert explanatory testimony." (internal quotations omitted)).  Although Defendants may be correct about whether expert testimony is truly necessary, nevertheless, Defendants must still provide competent evidence that establishes a genuine issue for trial in order to defeat Plaintiff's Motion for Summary Judgment. *See, e.g.*, *Graham v. John Deere Co.*, 383 U.S. at 17–18 (holding that, although obviousness is a legal determination, that determination is based on four factual inquiries, including "the level of ordinary skill in the pertinent art"); *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002) ("Typically, testimony concerning anticipation must be testimony from one skilled in the art . . . ."). *See generally Celotex Corp.*, 477 U.S. at 324 (holding that, to defeat a motion for summary judgment on an issue that the party will bear the ultimate burden at trial, the party must produce competent evidence that

---

[4] In concluding that Defendants have failed to carry their burden of coming forward with evidence from which a reasonable jury could determine that any of the claims of the '942 Patent are invalid, the Court need not determine the types of evidence that would be sufficient to avoid summary judgment, including whether Defendants' failure to provide a witness with a certain level of skill in the art is "fatal" to Defendants' invalidity defense and counterclaim.

shows a genuine issue for trail).

In response to Plaintiff's Motion, Defendants rely solely on the claim charts attached to the invalidity contentions that they submitted in accordance with Local Rule 16.1-8(d).[5] (Resp. 21:24–22:3, ECF No. 445; *see also* Resp. Ex. 3, at 19–54, ECF No. 445-4.) However, these claim charts are merely statements of counsel and "arguments of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment." *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (internal quotation marks omitted); *see also Celotex Corp.*, 477 U.S. at 324 (holding that a party that will carry the ultimate burden at trial cannot defeat summary judgment with assertions and allegations of the pleadings; the party must produce competent evidence that shows a genuine issue for trail). Because Defendants rely only on these arguments of counsel to establish a genuine issue for trial, they have failed to provide any testimony from any competent witness to support the claim charts submitted by Defendants' counsel.[6] *See, e.g.*, *Diodem, LLC v. Lumenis Inc.*, 03-cv-02142-GAF-RCX, 2005 WL 6225366, at *16 (C.D. Cal. Jan. 24, 2005).

The Court recognizes that, at first blush, disregarding Defendants' claim charts in this way may seem inconsistent with the Court's prior reference, in Section III(A) above, to the claim charts that Plaintiff provided in its Motion for Summary Judgment. However, the statements in Plaintiff's claim chart are based on Dr. Kazmer's expert report. Thus, the claim

---

[5] The only documents that Defendants provide that the Court could possibly consider consist of the actual prior art references on which Defendants based their invalidity contentions. However, "'[i]t is not the trial judge's burden to search through lengthy technologic documents for possible evidence." *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1313 (Fed. Cir. 2011) (quoting *Schumber v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002)). As such, Defendants' submission of these prior art references, without testimony—regardless of whether that testimony was from one skilled in the art—cannot defeat Plaintiff's Motion for Summary Judgment of No Invalidity.

[6] Because Defendants have failed to point to any witness testimony or any other competent evidence to support its invalidity contentions, the Court need not address whether an expert witness or even a witnesses that possesses a specific level of skill in the art would be required to carry Defendants' burden on summary judgment.

chart on which the Court previously relied represents a summary of Plaintiff's actual evidence. In contrast, the claim chart that Defendants provided, by incorporating more than thirty pages of its invalidity contentions into its Response to Plaintiff's Motion, merely consist of counsel's statements and references to various prior art references.  Defendants fail to provide any reports, deposition testimony, or other competent *evidence* to support these bare assertions of counsel.  Accordingly, the Court finds that Defendants have failed to carry their burden of providing evidence sufficient to carry their burden of establishing a genuine issue for trial.[7]  For these reasons, Plaintiff's Motion for Summary Judgment of No Invalidity is GRANTED.

## V.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES

Plaintiff also requests that the Court summarily adjudicate the amount of damages to which it would be entitled if the '942 Patent is found valid, enforceable and infringed.  Section 284 of the Patent Act provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ." 35 U.S.C. § 284. "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991).  Here, Plaintiff asserts that the Court should award "$1,275,906 in lost profits plus $22,612 in royalties attributable to AE Tech's sales to the S&F defendants." (Pl.'s Mot. for Summ. J. 14:4–6, ECF No. 412.)  In addition, Plaintiff contends that it is entitled to "$81,452 in lost profits plus $1,561 in royalties attributable to AE Tech's sales to others." (*Id.* at 14:6–7.)  Finally, Plaintiff argues that it should recover "$951,092 in lost profits plus $42,961 in royalties attributable to sales by the

---

[7] Of course, the Court makes no decision as to whether the prior art references cited by Defendants could, if Defendants had provided the proper evidentiary support, defeat a motion for summary judgment of no invalidity. However, because Defendants chose to rely solely on statements of counsel and failed to provide any competent evidence of invalidity, the Court does not reach that issue.

S&F defendants." (*Id.* at 14:7–8.)  Plaintiff relies primarily on the report prepared by its damages expert, Dr. Cox, and the documentation on which Dr. Cox relies in forming his conclusions.

       Whether lost profits are legally available is a question of law. *See Poly-Am. L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004).  "To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).   The Federal Circuit has held that a court may reasonably infer this causation element if the patentee establishes the factors articulated in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). *See Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ("A showing under *Panduit* permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's *prima facie* case with respect to 'but for' causation.").  Thus, Plaintiff may establish "but for" causation by establishing each of the four *Panduit* factors: "(1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit [it] would have made." *Panduit*, 575 F.2d at 1156.  Even if Plaintiff established the remaining factors as a matter of law, issues of fact remain as to whether noninfringing substitutes exist for the claimed touch screen protector product.  Thus, the Court cannot grant Plaintiff's Motion on the issue of the amount of damages.

       "'The existence of a noninfringing substitute is a question of fact.'" *Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1373 (Fed. Cir. 2008) (quoting *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1577 (Fed. Cir. 1992)).

> [T]he mere existence of a competing device does not necessarily make that device an acceptable substitute. A product on the market which lacks the advantages of the patented product can hardly be termed a substitute acceptable to the customer who wants those advantages. Accordingly, if purchasers are motivated to

purchase because of particular features available only from the patented product, products without such features—even if otherwise competing in the marketplace—would not be acceptable noninfringing substitutes.

Thus, to prove that there are no acceptable noninfringing substitutes, the patent owner must show either that (1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis.

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991).

Although Plaintiff and its expert assert that there were no acceptable noninfringing substitutes on the market at the time of infringement, Defendants have previously provided several examples of noninfringing substitutes by numerous competitors. (*See* Tan Decl. ¶¶ 5–14, ECF No. 89-4.)  To overcome Defendants' evidence, Plaintiff argues that none of these touch screen protector products guarantee screen protection without air bubbles. (Pl.'s Reply 9:3–5, ECF No. 9.)  However, Plaintiff failed to carry its burden of establishing that the purchasers in the marketplace for touch screen protectors were willing to pay the higher cost of Plaintiff's product, which embodies the '942 Patent, purely because it was free from air bubbles.[8]  For this reason, the Court cannot determine, on summary judgment, that Plaintiff is entitled to lost profits; genuine issues of material fact underlying the determination of whether Plaintiff is entitled to lost profits remain to be decided by the jury at trial.

## VI.   **CONCLUSION**

**IT IS HEREBY ORDERED** Plaintiff's Motion for Summary Judgment (ECF No. 412) is **GRANTED-IN-PART and DENIED-IN-PART**.  The '942 Patent is valid and infringed.  However, issues of fact preclude summary judgment on the amount of damages for

---

[8] Plaintiff correctly notes that, at the preliminary injunction and sanctions stage, the Court calculated the appropriate amount of *sanctions* for Defendants' violation of the preliminary injunction order using a lost profits calculation.  However, at the summary judgment stage, the Court cannot summarily adjudicate the issue of *actual damages* for patent infringement, under 35 U.S.C. § 284, when disputed issues of fact remain.  At the current stage of the litigation, Plaintiff has failed to establish that no genuine issues of material fact remain on the issue of Plaintiff's entitlement to lost profits.

Defendants' patent infringement.

IT IS FURTHER ORDERED that the parties shall submit their Joint Pretrial Order within thirty (30) days of the date of this Order.

IT IS FURTHER ORDERED this case shall be referred to Magistrate Judge Koppe for the setting of the Pretrial Settlement Conference pursuant to Local Rule 16.1-19(c).

DATED this ___20___ day of August, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge